**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| DEANGELO THOMAS-EL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:20-CV-409 PLC |
| ) | |
| DANIEL ALFERO, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of plaintiff DeAngelo Thomas-El, an inmate at the Potosi Correctional Center ("PCC"), for leave to commence this civil action without prepaying fees or costs. Having reviewed the motion and the financial information submitted in support, the Court has determined to grant the motion, and assess an initial partial filing fee of $2.65. Additionally, for the reasons discussed below, the Court will dismiss this action pursuant to 28 U.S.C. § 1915(e)(2)(B).

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to his account. 28 U.S.C. § 1915(b)(2). The

agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of the instant motion, plaintiff submitted an inmate account statement showing an average monthly deposit of $13.26, and an average monthly balance of $7.68. The Court will therefore assess an initial partial filing fee of $2.65, which is twenty percent of plaintiff's average monthly deposit.

### Legal Standard on Initial Review

This Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2). An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts, but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone*

*v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even *pro se* complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 against Case Manager Daniel Alfero; Functional Unit Manager Lonnie Smallen; J. Freeman, Acting Assistant Warden; Deputy Warden, Jody Glore; Deputy Division Director Jeff Norman; Correctional Officer, Jessica Agers; and Functional Unit Manager Unknown Parker. Plaintiff states he is suing defendants in their individual capacities only. Plaintiff alleges as follows.

Plaintiff alleges that on August 2, 2019, he was moved from his two-man cell on B-Wing at Potosi Correctional Center ("PCC") to a one-man cell by correctional officers Crippin and Jarvis. He claims that when he asked why he was being moved he was told by Officer Crippin that he was being moved for "masturbating." He claims that his cellmate, Morris Williams, yelled out as he was being moved from the cell, "It was me that was masturbating, it wasn't Mr. Thomas."

Plaintiff states that after he was taken to his new cell, an unknown Sergeant and Jessica Agers came to his cell door and the Sergeant read him his Miranda rights. Plaintiff asserts that he asked defendant Agers, "Are you sure I was the one exposing myself or masturbating?" Plaintiff states that Jessica Agers replied, "They said you sleep on the bottom bunk." Plaintiff alleges he told Ms. Agers, "I sleep on the top bunk." But that Jessica Agers told plaintiff, "I am not going to argue with you about it."

3

Plaintiff claims he requested Morris Williams as his witness and at that time, he was not given a copy of the conduct violation.

Plaintiff alleges that during his time in the one-man cell, while the investigation into the conduct violation was occurring, from lunch on August 2, 2019 until lunch on August 5, 2019, he was given meal-loaf every lunch and dinner. He states that it was either "frozen" or "freezer burned." However, he admits that he was given a regular tray of food for dinner on the evening of August 5, 2019. Plaintiff states that he was moved back to the two-man cell, in with his original cell mate, Morris Williams, on August 6, 2019. Plaintiff claims that at this time, his cell mate told him that he told Case Manager Daniel Alfero that he was the one masturbating.

Plaintiff alleges that on August 9, 2019, defendant Unknown Parker, a Functional Unit Manager, and an Unknown Lieutenant approached his cell to hold a hearing on the conduct violation. Plaintiff states that at this point, Morris Williams stated to Parker, "I take full responsibility. I was the one [masturbating]." Plaintiff states that at this point, Parker interrupted Mr. Williams, stating, "I already have your statement. I don't need to hear your mouth."

Plaintiff alleges that at this point, defendant Parker asked plaintiff for a statement, and plaintiff told defendant Parker that his witness statement should exonerate him. He asserts that Parker then found him guilty of the conduct violation, violating Institutional Rule 7.3, exposing one's genitals. Plaintiff asserts that he was sentenced to ten days disciplinary segregation to start on August 9th and end on August 18th.

Plaintiff asserts that he appealed the conduct violation by filing an Informal Resolution Request ("IRR"). Daniel Alfero, Case Manager, allegedly investigated the incident, Lonnie Smallen, Functional Unit Manager, responded to the IRR and J. Freeman, Acting Assistant Warden, reviewed the IRR result. Plaintiff states that the IRR was denied. Plaintiff asserts that his

grievance was denied by Jody Glore, Deputy Warden.[1] Additionally, his grievance appeal was denied by Jeff Norman, Deputy Division Director. Plaintiff has failed to attach his administrative remedies to his lawsuit.

Plaintiff claims that during his time in disciplinary segregation he was denied recreation on four separate occasions which caused him pain in his shoulder from his inability to exercise on a consistent basis. He also points to the three days in which he received meal loaf as days in which he was "starving." Plaintiff also states that he suffers from defamation of character at the Missouri Department of Corrections as other inmates look at him as though he is a sexual deviant. Additionally, he states in a conclusory manner that he has "lost job opportunities" at the MDOC.

He seeks monetary relief from each defendant.

## Discussion

Prisoners may claim the protections of the Due Process Clause, and may not be deprived of life, liberty, or property without due process of law. *Haines v. Kerner,* 404 U.S. 519 (1972). However, a due process claim "is cognizable only if there is a recognized liberty or property interest at stake," and courts "need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest." *Beaulieu v. Ludeman,* 690 F.3d 1017, 1047 (8th Cir. 2012) (internal citations omitted).

As to plaintiff's individual capacity claims against defendants, prisoners may claim the protections of the Due Process Clause, and may not be deprived of life, liberty, or property without due process of law. *Haines v. Kerner,* 404 U.S. 519 (1972). However, a procedural due process

---

[1] Plaintiff states in a conclusory fashion that he received ninety (90) additional days in administrative segregation after denial of his grievance. However, he does not state why he was given additional time, nor does he provide the Court with documentation as to an alleged hearing regarding the addition of such time. The Court is left to surmise that the additional time must be related to a separate conduct violation as plaintiff admits that he only received ten (10) days on his original offense.

5

claim "is cognizable only if there is a recognized liberty or property interest at stake," and courts "need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest." *Beaulieu v. Ludeman,* 690 F.3d 1017, 1047 (8th Cir. 2012) (internal citations omitted).

The Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 4 72, 484 (1995); *see also Phillips v. Norris,* 320 F.3d 844, 846-47 (8th Cir. 2003). Therefore, in the case at bar, this Court needs reach the question of what process was due only if plaintiff's allegations demonstrate that his placement in disciplinary segregation and/or administrative segregation created an atypical and significant hardship under *Sandin. See Beaulieu,* 690 F.3d at 1047.

Regarding his placement in disciplinary segregation, plaintiff alleges only that the duration was 10 days, as well as the 3 days during the investigation period. He alleges no facts tending to show the conditions of that confinement imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life. Placement in disciplinary segregation does not, in and of itself, amount to an atypical and significant hardship. *See Portley-El v. Brill,* 288 F.3d 1063, 1065 (8th Cir. 2002) (recognizing that the Eighth Circuit has consistently held that disciplinary segregation is not an atypical and significant hardship under *Sandin).* Also, plaintiff cannot demonstrate that 30 days in disciplinary segregation was unduly long. *See Kennedy v. Blankenship,* 100 F.3d 640, 641-42 (8th Cir. 1996) (30 days in punitive isolation was not atypical and significant); *Orr v. Larkins,*610 F.3d 1032, 1033-34 (8th Cir. 2010) (nine months in disciplinary segregation was not atypical and significant).

6

Plaintiff also alleges that his recreation privileges were limited for a four-day period, and additionally, for a three-day period during the investigation of the conduct disorder, he was given meal loaf. Again, plaintiff alleges the duration of these restrictions, but he does not allege any facts permitting the conclusion that these restrictions imposed an atypical and significant hardship under *Sandin*.

To state a claim under § 1983 for unconstitutional placement in administrative segregation, a prisoner "must show some difference between his new conditions in segregation and the conditions in the general population which amounts to an atypical and significant hardship." *Phillips*, 320 F.3d at 847.

Plaintiff has not provided the Court with any indication of how often he was allowed recreation during his time in a two-man cell. Nor has he indicated how his assignment of a bagged lunch with purported meal loaf for several days affected him. In other words, plaintiff has not provided any indication that he lost weight over a three day period, or that he was allergic to the meal loaf, or that he was following a religious diet prior to being placed in disciplinary segregation and that the prison refused such a diet in assignment of plaintiff to a one-man cell. *E.g., Hemphill v. Delo*, 124 F.3d 208 (8th Cir. 1997) (unpublished) (four days locked in housing unit, thirty days in disciplinary segregation, and approximately 290 days in administrative segregation not atypical or significant).

In light of the aforementioned, plaintiff has failed to allege a due process claim against any of the defendants relative to his placement in administrative segregation and/or disciplinary segregation. The only two defendants named in the complaint involved in the investigation and placement of plaintiff in disciplinary and/or administrative segregation are defendant Agers and

7

defendant Parker. The remaining defendants appear to have been named because they relate to the denial of plaintiff's administrative remedies.

To the extent plaintiff proceeds on the theory that any defendant is liable to him because he or she held an administrative or supervisory position, such allegations do not state a cognizable claim. *See Boyd v. Knox,* 47 F.3d 966, 968 (8th Cir. 1995) *(respondeat superior* theory inapplicable in § 1983 cases).

Case Manager Daniel Alfero, Functional Unit Manager Lonnie Smallen; Acting Assistant Warden J. Freeman, Deputy Warden Jody Glore and Deputy Division Director Jeff Norman will also be dismissed from this action. Plaintiff can be understood to allege that these defendants held supervisory or administrative roles, and that they are liable to him because they failed to act upon an unspecified complaint, grievance, and grievance appeal, respectively. Plaintiff does not allege that he asked these defendants to change his conditions of confinement, nor does he allege that any of these defendants personally denied his requests.

To state a claim under § 1983, plaintiff must plead that a government official has personally violated his constitutional rights. *Jackson v. Nixon,* 747 F.3d 537, 543 (8th Cir. 2014) (citing *Iqbal,* 556 U.S. at 676). *See also Boyd v. Knox,* 47 F.3d 966, 968 (8th Cir. 1995) (claims sounding in *respondeat superior* are not cognizable under § 1983). Showing direct action is not the only way to establish the personal involvement of a defendant with a supervisory or administrative role. *Jackson,* 747 F.3d at 543. A plaintiff can show that such defendant's "corrective inaction amounts to 'deliberate indifference' to or 'tacit authorization' of the violative practices." *Choate v. Lockhart,* 7 F.3d 1370, 1376 (8th Cir. 1993) (quotations omitted). A plaintiff can also show that such a defendant was involved in "creating, applying or interpreting a policy" that gave rise to unconstitutional conditions. *Jackson,* 747 F.3d at 543 (citations omitted).

In this case, plaintiff has alleged no facts permitting the inference that Alfero, Smallen, Freeeman, Glore or Norman were personally involved in violating his constitutional rights. Plaintiff does not specify what he alleged in the complaint, grievance or grievance appeal. Consequently, there are no facts permitting the inference that these defendants were made aware that plaintiff's Eighth Amendment rights were somehow violated. There is therefore no basis to conclude that defendants failed to act after being made aware of violative practices, that they tacitly authorized violative practices, or that they created, applied, or interpreted a policy that gave rise to unconstitutional conditions. While the Court must liberally construe *pro se* filings, the Court will not assume facts plaintiff has not alleged. *See Stone*, 364 F.3d at 914-15.

To the extent plaintiff can be understood to claim that Alfero, Smallen, Freeeman, Glore or Norman are liable to him because they failed to properly process an IRR, grievance or grievance appeal or failed to follow prison policy, such claim fails. There is no federal constitutional right to a prison grievance procedure, and neither state law nor state policy creates one. Therefore, if a state elects to provide a grievance mechanism, violations thereof will not give rise to a § 1983 claim. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (prison officials' failure to process or investigate grievances, without more, is not actionable under § 1983; grievance procedure is procedural right only and does not confer substantive right on inmate). In addition, it is well established that there is no federal constitutional liberty interest in having prison officials follow prison regulations. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (citing *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996)).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion seeking leave to commence this action without prepaying fees or costs (ECF No. 3) is **GRANTED**.

9

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $2.65 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) this case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS HEREBY ORDERED** that this action is **DISMISSED** as frivolous, malicious, or for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS HEREBY ORDERED** that plaintiff's motion to appoint counsel (ECF No. 2) is **DENIED** without prejudice.

**IT IS HEREBY CERTIFIED** that an appeal from this Order of Dismissal would not be taken in good faith.

Dated this 13th day of October, 2020.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE